WHITE, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 32, 33.  Argued January 7, 1970.—Decided February 6, 1970.*
(Also reported in 173 N. W. 2d 649.)

674

For the plaintiff in error there was a brief by *Karius, Kmiec & Kay,* attorneys, and *Marjan R. Kmiec* of counsel, all of Milwaukee, and oral argument by *Marjan R. Kmiec.*

For the defendant in error the cause was argued by *Michael Ash,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HEFFERNAN, J. We are satisfied after extensively reviewing the facts, portions of which are set forth in the statement above, that the evidence was clearly sufficient to sustain a verdict of first-degree murder. We have frequently said:

". . . when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. . . . This ultimate test is the same whether the trier of the facts is a court or a jury. . . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

". . . Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.'" *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

Applying this test, it appears clear that the evidence of Ronda June Campbell and Ozell Gates substantiates beyond a reasonable doubt the trial court's conclusion that the defendant walked into the living room and stabbed her husband almost immediately after entering the apartment. Admittedly, the testimony of the defendant was to the contrary. We have a clear contradiction in the testimony, and it was the function of the trial judge to resolve these doubts on the basis of his appraisal of the credibility of the evidence under the test stated in *Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101:

"The credibility of the witnesses is properly the function of the jury or the trier of fact. . . . It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial." *See also Lemerond v. State* (1969), 44 Wis. 2d 158, 162, 170 N. W. 2d 700.

On the other hand, it is the claim of the defendant that, even under the test of *Gauthier*, the testimony of Ozell Gates and Ronda June Campbell must be disbelieved as being patently incredible. This contention is based on the fact that the bloodstains were found not in the living room but in the vicinity of the entranceway to the kitchen, where the defendant claims the stabbing took place. It should be pointed out, however, that the testimony of the medical examiner did not indicate that the blood would immediately gush forth at the very

place and be found on the floor where the stabbing took place. As Judge DECKER properly stated, it could be concluded from her testimony that there would be some immediate bleeding when the knife was withdrawn. It would reach a peak and would decrease as the blood pressure diminished. There was no evidence indicating when the knife was withdrawn from the wound. In any event, it appears that the physical facts and the expert testimony of the medical examiner are not of such an unequivocal nature that it could be said as a matter of law that the testimony of Ozell Gates and Ronda June Campbell was incredible. The trial judge could, as he did, believe the testimony which supported the state's theory of the case. Conversely, the trial judge concluded the testimony of the defendant was incredible. In his analysis of the evidence he stated:

"There was a scuffle; there was one stab wound. If it occurred as the prosecution witnesses say it occurred, there is no doubt whatsoever in the Court's mind that the evidence conclusively establishes the requisite intent and all of the other elements of first degree murder with intent so demonstrated that it existed for a period of time sufficient to ascribe first degree murder to the circumstances.

"Added to those circumstances of the prosecution's witnesses are the fact that Mrs. White's testimony is incredible in certain respects. It is incredible to believe that a woman who was stood up by her husband in a nearby tavern, that she didn't want to be in, and wanted to be at home, would follow her husband for the purpose —to this other place, for the purpose of informing him that she was going home—the place where she had already informed him before she went to the tavern that she wanted to be."

It is apparent that the evidence was not "so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' "

*Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183. The evidence was sufficient.

The defendant also claims that error was committed during the course of the trial. Counsel, however, denominates only one error as prejudicial. It appears that the trial judge, noting that the witness Ronda June Campbell appeared to be pregnant, asked defense counsel that she be called first. No objection was made to calling the witness at that time. She, however, was not available then, and thereafter counsel was unable to call her in the sequence preferred by defense counsel. The effect of this, it is now contended, was to permit Dr. Young to testify at a time earlier than trial counsel had contemplated. This resulted in certain facts that were probative to the state's case to be testified to prior to the time that Nora Gates was called for the purpose of showing that blood was visible for the first time in the kitchen. It was contended that this prevented the framing of a proper hypothetical question to the medical witness and the preferred exposition and sequence of the defendant's theory of the case. Considering the record as a whole, we see no foundation for this assertion. This was not a trial to a jury, and we see no evidence whatsoever that the trial judge failed to grasp the defendant's theory of defense, nor do we see that the failure to pose the hypothetical question to Dr. Young resulted in any prejudice.

Other errors are also alleged. It is admitted that they are nonprejudicial, but counsel contends that cumulatively these errors resulted in a miscarriage of justice and require a reversal of that ground. The motion for a new trial in the interests of justice was specifically denied by the trial judge. We have stated that, on review of a denial of a motion for a new trial, the test is whether the trial judge abused his discretion. We are satisfied from the careful analysis of the evidence that is apparent both in the judge's initial decision prior

to judgment and in his extensive findings and in the opinion following the motion for a new trial that the trial judge exhaustively explored each of the assignments of error. Where a trial judge's order denying a motion for a new trial is based upon a careful examination of the facts, and reasonable inferences are drawn therefrom, there can be no abuse of discretion in the absence of an error of law.

The counsel in the prosecution of these writs of error, hereinafter referred to as appeal, also asks that we exercise our own appellate court prerogative under sec. 251.09, Stats., to set aside the judgment in the interests of justice. We have, however, said that a new trial will be granted in the interests of justice only where it appears that the defendant ought not to have been convicted and that a new trial conducted under optimum conditions would probably result in an acquittal. *See Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183, and *Commodore v. State* (1967), 33 Wis. 2d 373, 147 N. W. 2d 283. Applying this test, we are satisfied that the interests of justice were served by the conviction of this defendant.

We should also comment upon the attack made in the brief upon the competency of trial counsel. Counsel on this appeal appears to argue that objections to certain testimony should have been voiced more forcefully by the trial attorney and that, viewing the record as a whole, certain testimony should have been given greater emphasis. We believe that this assertion was correctly typified by the trial judge when he stated:

"I come to the conclusion that they are more Monday-morning quarterbacking than a matter of meritorious presentation to the court of some basis for according a new trial . . . ."

On oral argument the defendant's appellate counsel appeared to partially abandon the assertion that trial counsel was inadequate, for he referred to the defense

as "vigorous." A review of the record indicates that the defense was indeed just that. We have frequently said that we will not label trial counsel's representation as being insufficient to satisfy constitutional requirements unless it is "so inadequate and of such low competence that it amounted to no representation at all." *State v. Willing* (1968), 39 Wis. 2d 408, 413, 159 N. W. 2d 15. Certainly, the tactics and skill displayed by trial counsel far surpass that minimum standard. In reviewing this case it should be borne in mind that the state was able to produce two eyewitnesses to the stabbing. It is difficult to conceive of what strategem could alternatively have been devised that would have made possible an adequate defense to the prosecution's case.

Perhaps the point stressed most by the defendant on appeal is the failure of the court to insist on a proper waiver of the right to a jury trial. Sec. 957.01 (1), Stats., authorizes the waiver of a trial by jury. That statute provides:

"Except as otherwise provided in this chapter, criminal cases in courts of record shall be tried by a jury of 12, drawn as prescribed in ch. 270, unless the defendant waives a jury trial in writing or by statement in open court, entered in the minutes, with the approval of the court and the consent of the state. . . ."

It appears that the statutory requirements were meticulously observed. Defendant appeared with her attorney, who advised the court that she had discussed the matter thoroughly with the defendant and that the defendant wished to waive a jury and have the matter tried before a court. The district attorney, prior to the signing of a written waiver, asked permission to question Willie May White. He inquired about her education, and determined that she knew that she was waiving the right to a trial by jury of twelve persons and that she did this voluntarily without any threats and promises and only as an act of her own free will. Thereafter, the jury

waiver previously prepared by defense counsel was signed by Willie May White. We conclude that the claim that the waiver was not made intelligently, deliberately, and voluntarily is wholly without merit.

*By the Court.*—Judgment and order affirmed.