SPRANG, Plaintiff in error, v. STATE, Defendant in error.

*No. State 185. Submitted under sec. (Rule) 251.54 April 3, 1974.— Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 304.)

The cause was submitted for the plaintiff in error on the brief of *Teper, Fiorenza, Weiss & Teper, S. C.,* attorneys, and *John A. Fiorenza* and *Dominic S. Amato* of counsel, all of Milwaukee, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Christine M. Wiseman,* assistant attorney general.

WILKIE, J.  Two issues are presented on this review:
1. Did the trial court commit reversible error in denying defendant's motion for substitution of judge and in failing to disqualify himself for prejudice?
2. Is the defendant entitled to a new trial in the interest of justice?

*Motion for substitution of judge untimely.*

After the preliminary was held in early March, 1972, the defendant was bound over to the Milwaukee county circuit court for trial. On April 13th the defendant was arraigned before Circuit Judge HUGH R. O'CONNELL and pleaded not guilty. At that time the defendant also made a motion to dismiss for insufficiency of the preliminary, which motion was denied. Bail was modified and the defendant posted 10 percent of the amount in cash. The defendant waived his right to a speedy trial and the case was continued for trial to June 8th. On that date the defendant was not in court and Judge O'CONNELL ordered a capias issued for his arrest. The capias was returned on July 18th, at which time the

proceedings were continued to July 20th, and bail was raised. On July 20th the case was continued to October 17th for trial. On that day, on order of Chief Judge LEANDER FOLEY, the case was transferred to Branch 18 for a jury trial on that date. When the defendant was informed that Judge CHRIST SERAPHIM would be presiding at his trial instead of Judge HUGH O'CONNELL he asked his counsel to ask for a substitution of judge. Judge SERAPHIM denied the motion as untimely under sec. 971.20, Stats. Trial was had and the jury returned a guilty verdict.

Sec. 971.20, Stats.,[1] provides for the procedure to be followed by a criminal defendant in requesting a substitution of judge without demonstrating or alleging

---

[1] "971.20 **Substitution of judge.** (1) The defendant may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case. Such request shall be signed by the defendant personally and shall be made before making any motion or before arraignment.

"(2) Upon the filing of such request in proper form and within the proper time the judge named in the request shall be without authority to act further in the case except to set bail if requested by the defendant. Not more than one judge can be disqualified in any action. All defendants must join in any request to substitute a judge.

"(3) In addition to the procedure under sub. (1), a request for the substitution of a judge may also be made by the defendant at the preliminary examination except that the request must be filed at the initial appearance or at least 5 days before the preliminary examination unless the court otherwise permits.

"(4) When a judge is disqualified under this section, the clerk of circuit court shall request assignment of another judge pursuant to s. 251.182.

"(5) The request in sub. (1) may be in the following form:

"STATE OF WISCONSIN, . . . County, . . . Court
"State of Wisconsin vs. . . . (Defendant)
"Pursuant to s. 971.20 the defendant requests a substitution for the Hon. . . . as judge in the above entitled action.
"Dated . . .
". . . (Signed by defendant personally)"

actual prejudice.[2] In the instant case the proceedings had long passed the arraignment stage without a request for a substitution of judge being made. This foreclosed the defendant from making a motion for a substitution of judge at the time when the case was assigned to Judge SERAPHIM.

Sub. (3) of sec. 971.20, Stats., concerns only the making of a motion to substitute a judge for the judge who is presiding at the preliminary hearing. This stage had been passed long before the substitution request was made here.

The recent case of *Baldwin v. State*[3] involved an attempted substitution of judge in a Milwaukee circuit court. In that case the arraignment was not completed until the matter was assigned to the final circuit court and the defendant did not make a timely motion there and the case held that there was no error by the trial court in ruling that the requested substitution there was untimely. Here the trial court had had the matter for months and as a matter of fact, had ordered continuances. If the statutes are to provide for a substitution request even at this late stage, then sec. 971.20, Stats., must be amended to that effect.

*No actual prejudice shown.*

The defendant contends that there were a number of instances which, singly or together, demonstrate prejudice on the part of Judge SERAPHIM so that the defendant's right to a fair trial before an impartial tribunal[4] was denied.

---

[2] *State v. Garner* (1972), 54 Wis. 2d 100, 102, 194 N. W. 2d 649.
[3] (1974), 62 Wis. 2d 521, 215 N. W. 2d 541.
[4] *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155; *State ex rel. Mitchell v. Bowman* (1972), 54 Wis. 2d 5, 194 N. W. 2d 297.

The defendant first contends that he was prevented by Judge SERAPHIM from making a complete offer of proof because of the "judge's conduct as an advocate." The record indicates, however, that the defense attorney was not prevented from completing a full offer of proof that prior contacts with the defendant caused Judge SERAPHIM to be prejudiced.

The defense attorney apparently was attempting to show that prior appearances of the defendant before Judge SERAPHIM resulted in prejudice against the defendant. However, the fact that a defendant has appeared before a judge on prior occasions does not in itself establish prejudice. In *Milburn v. State* [5] this court said:

". . . It is not infrequent that trial judges have before them defendants who have been previously tried in their courts and who might well have been sentenced by them. This does not negate the presumption that the trial judge, in fidelity to his oath of office, will try each case on its merits."

The defendant next contends that the conduct of the judge during an in-chambers discussion of a plea bargain evidenced his prejudice against the defendant. He asserts that the plea bargain was stifled and rejected not because it did not meet the requirements of this court for the acceptance of guilty pleas as set forth in *Ernst v. State* [6] but because the judge did not want the district attorney to carry out the plea bargain. The defendant contends that the judge's unwarranted interference with the district attorney's power to enter a plea bargain demonstrates prejudice and constitutes reversible error in and of itself.

[5] (1971), 50 Wis. 2d 53, 62, 183 N. W. 2d 70; *see also: State v. Carter* (1966), 33 Wis. 2d 80, 88, 146 N. W. 2d 466; *State v. Cleveland* (1971), 50 Wis. 2d 666, 184 N. W. 2d 899; Annot. (1968), 21 A. L. R. 3d 1369, 1375, sec. 4 (c), and cases therein.

[6] (1969), 43 Wis. 2d 661, 170 N. W. 2d 713.

The record does not support the conclusion that the trial judge "rejected" the plea bargain in this case. The record reveals that after the judge was informed that a plea bargain had been worked out which called for the dismissal of the present charge in exchange for a plea of guilty to an unrelated charge of aggravated assault with a recommendation from the district attorney for a five-year sentence, he began to question the district attorney as to the purpose of the plea bargaining.

*"The Court:* What is the purpose of the plea bargaining?
*"Mr. O'Neill:* Well—
*"The Court:* There are two different cases.
" . . .
*"The Court:* Well, why can't he be tried on both?
*"Mr. O'Neill:* He—well, technically, he can.
*"The Court:* I know, but why do you have plea bargaining when you apparently have probable cause in both cases, and you have no apparent difficulty? You believe you have apparent difficulty in proving either one?
*"Mr. Fiorenza:* If the court please, I might just specify one thing.
*"The Court:* And why not have one and read the other one in? Why not have the greater and read the other one in on the lower, why?
*"Mr. Fiorenza:* I—
*"The Court:* Yes.
*"Mr. Fiorenza:* That's what the defendant had offered to do at one time, but the state would rather read the aggravated battery in, Judge.
*"The Court:* He offered to do what?
*"Mr. O'Neill:* Well, actually, the state would—we will go ahead."

The rest of the in-chambers discussion was off the record with no objection from defense counsel. Therefore, there is no record that the trial judge refused to accept or allow the district attorney to go forward with his agreed bargain. Nor does this questioning of the district attorney reveal prejudice against the defendant.

The defendant urges that a remark made by Judge SERAPHIM during defense counsel's cross-examination of Detective Gerald Culver is further evidence of the judge's prejudice against the defendant. The judge stated: "All I want to do is search for truth, Mr. Fiorenza, not for technicalities." When defense counsel protested that he also was searching for truth and not technicalities, the judge indicated that he was not suggesting that. After a short conference in chambers the judge sua sponte instructed the jury:

". . . Although Mr. Fiorenza has not asked me to, I am going to tell the jury that when I made the statement about search for truth, I was in no way implying that Judge Fiorenza did not have the same purposes in mind as I did. I want you to remove that from your minds entirely. I was just giving him my philosophy."

We think that this instruction to the jury corrected any impression that the defense counsel was not, like the trial court, searching for the truth which, of course, is one of the basic objectives of any criminal proceeding.

The defendant's final assertion of prejudice on the part of the trial court is the failure of Judge SERAPHIM to order a presentence investigation, and his postponement of sentencing until after the decision in the defendant's probation revocation hearing. This court has encouraged the use of presentence investigations and reports but has also stated that they are not necessarily required.[7] However, under the circumstances of this case we do not consider it an abuse of discretion not to have required a presentence investigation. The judge indicated that he had determined that probation would not be appropriate and it cannot be said from the record that this decision was activated by prejudice against the defendant. The defendant had been found guilty of a serious crime while on probation from another offense and the

[7] *Byas v. State* (1972), 55 Wis. 2d 125, 197 N. W. 2d 757; *see also: Tate v. State* (1973), 57 Wis. 2d 485, 204 N. W. 2d 474.

court was aware that he was also charged with aggravated battery.

Courts are permitted by statute [8] to postpone the imposition of sentence. In *State v. McClanahan* [9] this court found that an adjournment of sentencing for approximately ten days in order to attempt a consolidation of other charges pending against the defendant in other counties was not an abuse of discretion. We do not agree with the defendant's contention that the postponement of sentencing in the present case was without any "valid, logical or rational reason," nor that the only purpose of such postponement was to make sure that the defendant received a long sentence. In fact, Judge SERAPHIM indicated he would not impose a maximum sentence and the defendant on this appeal does not contend that his sentence was excessive or an abuse of discretion. While it is true that a fair and impartial judge is as crucial at the time of sentencing as at any other time, [10] the defendant has not demonstrated here that the sentencing decisions of Judge SERAPHIM were activated by prejudice or bias against the defendant.

### No new trial required in the interest of justice.

This court has said that it will not exercise its prerogative under sec. 251.09, Stats., to reverse a conviction in the interest of justice unless it appears that the defendant ought not to have been convicted and that a new trial conducted under optimum conditions would probably result in an acquittal. [11] A review of the evidence presented at the trial clearly dispels any contention that a miscarriage of justice has occurred in this case.

*By the Court.*—Judgment affirmed.

---

[8] Sec. 972.13 (2), Stats.

[9] (1972), 54 Wis. 2d 751, 756, 196 N. W. 2d 700.

[10] *State v. Garner, supra,* footnote 2, at page 103.

[11] *White v. State* (1970), 45 Wis. 2d 672, 681, 173 N. W. 2d 649; *State v. Heidelbach* (1971), 49 Wis. 2d 350, 360, 182 N. W. 2d 497.