STATE of Wisconsin, Plaintiff-Appellant,

v.

John F. CUMBER, Defendant-Respondent.

Court of Appeals

*No. 85–1611–CR. Submitted on briefs March 6, 1986.—
Decided March 25, 1986.*

(Also reported in 387 N.W.2d 291.)

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas A. Maroney,* district attorney, and *Sandra L. Engbretson,* assistant district attorney.

For the defendant-respondent the cause was submitted on the brief of *Thomas J. Zoesch,* of Appleton.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. The State of Wisconsin appeals from an order suppressing an inculpatory statement given to

the police by the defendant-respondent, John F. Cumber. The sole issue is whether the trial court erred in determining that the statement, though not coerced, was nonetheless involuntary when viewed in light of the totality of the circumstances. We are satisfied that there was no error and affirm.

Cumber, a nineteen-year old man of limited intelligence, was questioned by police with regard to a complaint that he had had sexual contact with a person under the age of twelve years. The offense is a Class B felony. Section 940.225(1)(d), Stats. During the hour-long interrogation, Cumber made several inculpatory statements and signed a written "confession."

The trial court heard testimony from the interrogating officer and from Cumber himself. The court found that while the police had not pressured or coerced Cumber into making the statements, they were nonetheless involuntary under the "totality of the circumstances." Prominent in the court's reasoning process was Cumber's low intelligence: "I am not satisfied from the evidence . . . that Mr. Cumber . . . had the ability . . . to completely understand [the statement]." The court suppressed Cumber's confession, and the state has appealed.

■■
When the voluntariness of a statement is challenged, the state must prove beyond a reasonable doubt that it was voluntarily given. *State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 264–65, 133 N.W.2d 753, 763–64 (1965), *cert. denied,* 384 U.S. 1017 (1966). On review we will not upset the trial court's finding with respect to voluntariness unless it is contrary to the great weight and clear preponderance of the evidence, *State v. Verhasselt,* 83 Wis. 2d 647, 653, 266 N.W.2d 342, 345

(1978); that is, unless it is clearly erroneous. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

In order to be admissible, an inculpatory statement must be the voluntary product of a free and unconstrained will, reflecting deliberateness of choice. *Roney v. State,* 44 Wis. 2d 522, 532–33, 171 N.W.2d 400, 404 (1969). Voluntariness depends on the totality of the circumstances—whether the circumstances preceding the confession go "beyond the allowable limits." *State v. Wallace,* 59 Wis. 2d 66, 81, 207 N.W.2d 855, 863 (1973), quoting *Fikes v. Alabama,* 352 U.S. 191, 197 (1957). Whether a confession is voluntary under all of the circumstances calls for a very careful balancing of the personal characteristics of the suspect with the pressures to which he or she may have been subjected at the time. *Verhasselt,* 83 Wis. 2d at 653, 266 N.W.2d at 345. The personal characteristics to be considered and weighed by the court include age, education and intelligence. *Wallace,* 59 Wis. 2d at 81–82, 207 N.W.2d at 863.

The trial court found that the officer did not use any coercive pressure in order to obtain Cumber's statement, and the state argues that a finding of involuntariness cannot be made without evidence of such pressure, relying primarily on *Procunier v. Atchley,* 400 U.S. 446 (1971), and *Norwood v. State,* 74 Wis. 2d 343, 246 N.W.2d 801 (1976), *cert. denied,* 430 U.S. 949 (1977). That reliance is misplaced.

The state seizes upon a statement in *Procunier* to the effect that low intelligence is not in itself a coercive factor, but rather is "relevant only in establishing a setting in which actual coercion might have been exerted

330

to overcome the will of the suspect." *Id.* at 453–54. The court's statement was made in response to a suggestion that lower-than-average intelligence, denial of the right to counsel and failure to advise of the right to remain silent were "coercive factors" which rendered the defendant's statement involuntary. There is no suggestion in *Procunier* that the defendant's understanding of his rights or the effect of his actions was in any way impaired or impeded by his low intelligence. That simply was not an issue; and the proposition for which the state offers the case is nowhere mentioned in the court's opinion. Indeed, the state concedes later in its brief that low intelligence is one of the factors to be taken into consideration in deciding whether the confession was involuntary.

*Norwood* is of similar import. There, the court refused to suppress the confession of a person whose "mental capacity was admittedly low," noting that "[t]he defendant's argument on this issue, while voiced in terms of voluntariness, is one mainly addressed to the trustworthiness of the statements." *Id.* at 366–67, 246 N.W.2d at 813–14. The state, relying on this language, argues that low intelligence does not bear on the voluntariness of the suspect's statement.

The *Norwood* court was careful to point out, however, that there was no evidence that the suspect's ability to waive his *Miranda* rights was impaired, and there is no indication in the opinion of any intention to overturn the long line of Wisconsin cases holding that the suspect's intelligence is one of the totality of circumstances to be considered in determining voluntariness. Rather, *Norwood* may be read as consistent with what appears to be the rule in the majority of ju-

risdictions that a suspect's subnormal intelligence is one factor—although it may be an important one—affecting the voluntariness of an inculpatory statement. The subnormality does not in itself render the statement inadmissible unless it is so extreme as to require a finding that the suspect is incapable of understanding the meaning and effect of the statement or the waiver of constitutional rights.[1]

We recognize that the police did not engage in any overtly coercive or overbearing conduct in their interrogation of Cumber, and overt coercion is an important factor in the totality of circumstances surrounding a confession. But the state has not satisfied us that forceful police coercion must be present in order to sustain a finding of involuntariness. Indeed, *Norwood,* the principal underpinning of the state's argument, requires the trial court to evaluate *all* of the circumstances. *Id.* at 364–65, 246 N.W.2d at 812–13.

There are occasions where the suspect's physical or mental condition may, in the interrogational setting, be the equivalent of overt or forceful pressure. In some cases, painful or mortal injuries might be sufficient to support a finding of involuntariness in the absence of actual coercion by the police. Where the sus-

---

[1] *Elrod v. State,* 202 So. 2d 539, 542 (Ala. 1967); *State v. Tothill,* 586 P.2d 655, 657 (Ariz. Ct. App. 1978); *People v. Henderson,* 404 N.E.2d 392, 399–400 (Ill. App. 1980); *State v. Winfrey,* 221 N.W.2d 269, 273 (La. 1974); *Commonwealth v. Daniels,* 321 N.E.2d 822, 826–27 (Mass. 1975); *People v. Langston,* 226 N.E.2d 686, 691 (Mich. App. 1975); *Dover v. State,* 227 So. 2d 296, 300 (Miss. 1969); *Casias v. State,* 452 S.W.2d 483, 488 (Tex. Crim. App. 1970).

Other cases on the subject are collected at Annot., 8 A.L.R. 4th 16, 24–25 (1981).

pect's intelligence is found to be so lacking that he or she is unable to understand the questions being asked, the rights waived or the ultimate confession itself, these circumstances may, in and of themselves, be sufficient to support a determination of involuntariness.

There was evidence that Cumber was nineteen years old and of subnormal intelligence. Although he had completed high school, it was as a "special education" student. He liked to "hang around" the police station and regarded the interrogating officer as a friend, one who would help him out if he ever got in trouble. The officer read Cumber his *Miranda* rights several times and believed that he understood them. The officer acknowledged that Cumber had difficulty keeping his mind on a particular subject for any length of time. He testified that Cumber was confused and upset, crying and contradicting himself several times during the interrogation and asking for help. Cumber eventually signed a written statement after the officer read it to him and gave him the opportunity to read it himself. He cried while testifying as well.

Cumber's own testimony at the suppression hearing revealed pronounced difficulty in reading. His several attempts to read from his statement while on the stand uniformly lapsed into extreme confusion and nonsensical sentences. During his testimony, Cumber gave contradictory answers to questions propounded by the court and counsel, just as he had while being interrogated by the police. At one point, for example, he testified that he did not understand that things he told the officer might later be used against him in court. At another point, he gave confusing and contradictory testimony as to his understanding of the words "vagina"

and "attorney"—words of obvious significance in the context of the case.

The trial court observed Cumber on the stand and questioned him at some length. The court found that, considering the totality of the circumstances, Cumber's confession was not the product of "a rational intellect and a free [and unconstrained] will." *State v. Schlise,* 86 Wis. 2d 26, 44, 271 N.W.2d 619, 627 (1978), quoting *Blackburn v. Alabama,* 361 U.S. 199, 208 (1960). On this record, the court's finding was not clearly erroneous.

*By the Court.*—Order affirmed.