**2025 WI 28**

# Supreme Court of Wisconsin



---

STATE OF WISCONSIN,
*Plaintiff-Respondent-Petitioner*,

*v.*

LUIS A. RAMIREZ,
*Defendant-Appellant*.

---

No. 2022AP959-CR
Decided June 27, 2025

---

REVIEW of a decision of the Court of Appeals
Columbia County Circuit Court (W. Andrew Voigt, J.), No. 2016CF31

---

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court with respect to all parts except ¶37 and n.6, in which ZIEGLER, DALLET, HAGEDORN, and KAROFSKY, JJ., joined, and an opinion with respect to ¶37 and n.6, in which ZIEGLER and HAGEDORN, JJ., joined. ANN WALSH BRADLEY, C.J., filed a concurring opinion, in which PROTASIEWICZ, J., joined. DALLET, J., filed a concurring opinion, in which KAROFSKY, J., joined. KAROFSKY, J., filed a concurring opinion.

---

¶1    REBECCA GRASSL BRADLEY, J. Our federal and state constitutions guarantee criminal defendants the right to a speedy trial. The Sixth Amendment of the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," and Article I, Section 7 of the Wisconsin Constitution says, "[i]n all criminal prosecutions the accused shall enjoy the right . . . in prosecutions by indictment, or information, to a speedy public trial." Luis

A. Ramirez, as an inmate already serving a lengthy sentence for felony convictions, attacked and injured a corrections officer. After a series of continuances and rescheduled trial dates, Ramirez was finally tried and convicted by a jury 46 months after he was criminally charged for the attack.

¶2      Ramirez moved for postconviction relief, alleging the 46-month delay violated his constitutional speedy trial right. The postconviction court denied his motion, and Ramirez appealed. The court of appeals reversed and ordered the only remedy available for constitutional speedy trial violations—dismissal of the charges. The State sought this court's review of a single issue: Whether Ramirez's constitutional right to a speedy trial was violated. We conclude it was not and reverse the court of appeals.

## I. BACKGROUND

### *The Crime*

¶3      Ramirez, an inmate at Columbia County Correctional Institution, stabbed a corrections officer in the head and neck with a sharpened pencil on May 5, 2015. At the time of the attack, Ramirez had already served 17 years of a 40-year sentence for armed robbery and battery to law enforcement officers.

### *Pretrial Proceedings*

¶4      On February 1, 2016, the State filed a complaint charging Ramirez with battery by a prisoner and disorderly conduct. At the initial appearance on February 11, Ramirez did not waive his right to have a preliminary hearing within 20 days. That hearing was held on February 18.

¶5      Because of a delay in the State Public Defender's Office, Ramirez appeared without counsel at his preliminary hearing. The circuit court gave Ramirez the option of proceeding without counsel or rescheduling the hearing, which would require Ramirez to waive his right to a preliminary hearing within 20 days. Ramirez chose the latter, and the court rescheduled the preliminary hearing for March 3, 2016.

¶6      At that hearing, Ramirez appeared again without counsel. Ramirez indicated he did not want to proceed unrepresented, so the circuit court rescheduled the preliminary hearing for May 10, 2016. Defense counsel was appointed a little over one week after the March 3 hearing.

¶7    Days before the May 10, 2016 preliminary hearing, defense counsel requested it be rescheduled. The circuit court rescheduled it for July 20. Two weeks prior to the July 20 preliminary hearing, a new public defender was appointed to represent Ramirez, and at the July 20 preliminary hearing, Ramirez's new counsel requested adjournment. The court rescheduled the preliminary hearing for August 4.

¶8    On August 4, 2016, the final preliminary hearing was held, at which point the circuit court bound the matter over for trial and scheduled Ramirez's arraignment for October 26, obliging defense counsel's request to schedule the arraignment "at a later time" so counsel could pursue potential motions. The arraignment was held on October 26, during which the court accepted Ramirez's not guilty plea and set the matter for trial. On December 21, 2016, the court issued a scheduling order that set a one-day trial for April 13, 2017.

¶9    On February 17, 2017, the State sent a letter to the circuit court requesting a continuance due to a necessary witness's unavailability. Before the court ruled on that request, the State sent another letter to the court on March 3, advising that a three-day trial would be necessary (as opposed to the one-day trial originally scheduled). Ramirez's counsel did not object to either request. On March 6, the court scheduled a status conference for March 27. Three days after that status conference, the court rescheduled the trial for September 26, 2017.

¶10    On August 4, 2017, the State sent a letter to the circuit court, informing it that Ramirez's trial would overlap with another trial. The State noted the Columbia County courthouse could not support more than one jury trial at a time, and asked the court to reschedule one of the trials. The State did not indicate a preference for which trial should be rescheduled but noted that neither defendant filed a speedy trial demand, and the trial that conflicted with Ramirez's was set first. On August 16, the court rescheduled Ramirez's trial to April 4, 2018.

¶11    On March 6, 2018, about a month before the April 4 scheduled trial, defense counsel moved for a continuance because counsel was waiting to receive Ramirez's health records from the Department of Corrections. In his motion for a continuance, defense counsel stated that Ramirez "ha[d] no objection and agree[d] with the motion." The circuit court held a hearing on that motion a week later, removed the April 4 trial from the calendar, and scheduled a status conference for May 21, 2018. After that status conference, the circuit court held a scheduling conference on August 6, 2018.

¶12     On September 26, 2018, almost 32 months after charges had been filed against him, Ramirez made a pro se speedy trial demand. The circuit court held an off-the-record telephone conference on October 3, 2018. Less than a week later, Ramirez's counsel notified the court that October 11 was the earliest date on which he could meet with Ramirez, and that counsel would "report on the status of the case after that conference." Nothing in the record indicates when counsel met with Ramirez or if counsel updated the court on the case's status. On November 1, the court set a scheduling conference for December 5. On that date, the court scheduled a two-day jury trial to begin on April 3, 2019.

¶13     On March 26, 2019, the State requested adjournment of the April 3 jury trial because the prosecutor was retiring and the newly assigned prosecutor needed additional time to prepare. Neither the defendant nor the victim objected to that request. The circuit court rescheduled the trial for December 3, 2019.

¶14     On April 15, 2019, Ramirez filed a pro se motion to dismiss, alleging, among other things, that his speedy trial right had been infringed. The circuit court held a hearing to address Ramirez's motion to dismiss on June 17 and denied it. On December 3, 2019, the jury trial began and Ramirez was convicted.

*Postconviction Proceedings*

¶15     Ramirez filed a postconviction motion to vacate the judgment of conviction and dismiss the case, alleging the 46-month delay in bringing him to trial after charges were filed violated his constitutional speedy trial right. The postconviction court held an evidentiary hearing at which Ramirez testified how he was prejudiced by the delay. Ramirez testified he was placed on restricted status in prison until the case was resolved, which, along with the pending charges, caused him stress-related health issues. The court found Ramirez's generalized claims of anxiety unpersuasive and, after applying the four-part balancing test articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), ultimately denied Ramirez relief. Ramirez appealed.[1]

---

[1] Ramirez also filed a motion for reconsideration, which the postconviction court denied.

¶16    The court of appeals disagreed with the postconviction court's decision. *State v. Ramirez*, 2024 WI App 28, ¶90, 412 Wis. 2d 55, 8 N.W.3d 74. Upon weighing the four *Barker* factors, the court of appeals concluded Ramirez's constitutional speedy trial right was violated. *Ramirez*, 412 Wis. 2d 55, ¶90.

¶17    The court of appeals first examined the length of the delay, describing it as "four times as long as 'the bare minimum needed to trigger judicial examination of the claim.'" *Id.*, ¶23 (citation omitted). The court concluded that not only was the total delay "'presumptively prejudicial,' thereby warranting further examination of the defendant's claim," but the total length of the delay was "extreme, and that the first *Barker* factor weighs heavily against the State." *Id.*, ¶¶20, 23 (citation omitted).

¶18    The court of appeals next examined the reasons for the delay, breaking the 46 months between the filing of the complaint and Ramirez's conviction into eight separate periods. Beginning with the first period (February 1–18, 2016), the court did not attribute it to the State because it "encompassed the time necessarily required for 'the orderly administration of criminal justice.'" *Id.*, ¶30 (citing *Scarbrough v. State*, 76 Wis. 2d 87, 101, 250 N.W.2d 354 (1977)). The court also declined to weigh the second period (February 18 – August 4, 2016) against the State, determining the delays were caused by the time it took to appoint defense counsel[2] as well as defense counsel's requests for continuances. *Id.*, ¶¶36–37.

¶19    The court of appeals weighed the third period (August 4, 2016 – April 13, 2017) "heavily" against the State, in part. *Id.*, ¶38. The court did not weigh the first 83 days against the State because defense counsel's request to postpone arraignment caused that delay. *Id.*, ¶40. The court weighed the remainder of the period, however, heavily against the State because, according to the court, the State offered "no explanation" why, "apart from the circuit court scheduling the first trial date, all court activity in this case appears to have ceased." *Id.*, ¶41. Relying on *State v. Borhegyi*, 222 Wis. 2d 506, 513, 588 N.W.2d 89 (Ct. App. 1998), the court concluded that "the State's failure to offer an explanation for substantial delays may

---

[2] While the court of appeals voiced concern about labeling a delay caused by the State's inability to promptly appoint defense counsel as "valid," the court also acknowledged that Ramirez impliedly conceded this point by not addressing it. *State v. Ramirez*, 2024 WI App 28, ¶36, 412 Wis. 2d 55, 8 N.W.3d 74.

be taken as indicating a 'cavalier disregard' for a defendant's speedy trial rights" and accordingly weighed the delay heavily against it. *Ramirez*, 412 Wis. 2d 55, ¶41.

¶20 The court of appeals weighed the fourth period (April 13 – September 26, 2017) against the State with "at least some portion" of the period weighing against it heavily. *Id.*, ¶¶42–49. According to the court, the reasons for delay provided by the State—the prosecutor's reassessment of the number of days needed to complete trial and the State witness's unexplained unavailability—were neutral reasons not to be weighed as heavily as "a deliberate attempt by the prosecution to hamper the defense or a cavalier disregard for the defendant's speedy trial rights." *Id.*, ¶47 (citing *Borhegyi*, 222 Wis. 2d at 512).

¶21 Nevertheless, the court of appeals also faulted the State for failing to make a record as to "why the circuit court adjourned the trial for more than five months . . . and why the trial could not have been more promptly rescheduled." *Id.*, ¶48. For that reason, the court weighed that portion of the period heavily against the State. *Id.*, ¶¶48–49 (citing *Borhegyi*, 222 Wis. 2d at 513). The court noted that "even if the State had developed a record regarding the specific causes of the delay in rescheduling the trial and the record indicated that [it] was caused by inadequate 'resources of the system of court administration,' the delay would still be attributed to and weighed against the State." *Id.*, ¶50 (citing *Hadley v. State*, 66 Wis. 2d 350, 362–63, 225 N.W.2d 461 (1975)).

¶22 The court of appeals weighed the fifth period (September 26, 2017 – April 4, 2018) against the State with "at least some portion" of the period weighing against it heavily. *Id.*, ¶55. The court of appeals deemed the State's explanation for the delay—double-booking the one available courtroom—a neutral factor to be weighed against the State, albeit not heavily. *Id.*, ¶¶53–54. However, the court again faulted the State for failing to explain "why the trial could not be scheduled more promptly than six months later," and weighed any unexplained portion heavily against it. *Id.*, ¶55 (citing *Borhegyi*, 222 Wis. 2d at 513).

¶23 The court of appeals did not attribute the sixth period (April 4 – September 26, 2018) to the State because the court determined the delays resulted from continuances requested by Ramirez's counsel. *Id.*, ¶58. The court weighed the seventh period (September 26, 2018 – April 3, 2019) heavily against the State because, according to the court, the State offered no explanation for the time between Ramirez's first pro se speedy trial

motion filed on September 26, 2018 and the fourth scheduled trial date of April 3, 2019. *Id.*, ¶61 (citing *Borhegyi*, 222 Wis. 2d at 513).

¶24     Similar to the fourth and fifth periods, the court of appeals weighed the eighth period (April 3 – December 3, 2019) against the State with a portion of the period weighing heavily against it. *Id.*, ¶¶62, 66. The court did not consider the prosecutor's retirement a valid reason and therefore weighed it against the State. *Id.*, ¶65. However, the court concluded the State's inability to explain "why the trial could not be rescheduled more promptly" resulted in weighing a portion of the period heavily against the State. *Id.*, ¶66 (citing *Borhegyi*, 222 Wis. 2d at 513). Considering the period of delay in its entirety, the court of appeals weighed the second *Barker* factor "fairly heavily" against the State. *Id.*, ¶75.

¶25     Moving on to the third *Barker* factor, the court considered when Ramirez asserted his speedy trial right. The court noted that Ramirez did not assert the right until September 26, 2018, "more than 31 months after charges were filed, and again on April 15, 2019." *Id.*, ¶77. It described these assertions as "somewhat delayed" and concluded the third *Barker* factor weighed against the State, "albeit not as heavily as [it] would had [the assertions] been made earlier in the pretrial proceedings." *Id.*, ¶83.

¶26     Finally, the court of appeals applied the fourth *Barker* factor and examined the extent to which the delay in bringing Ramirez to trial prejudiced him. The court presumed Ramirez suffered prejudice as a matter of law "given the extreme length of the delay as well as Ramirez's assertion of the right." *Id.*, ¶86. However, the court of appeals accepted the postconviction court's finding that Ramirez's testimony regarding actual prejudice suffered was not credible. *Id.* Accordingly, the court of appeals concluded "this factor does not weigh strongly in favor or against either party." *Id.*

¶27     On balance, the court of appeals decided Ramirez's speedy trial right was violated. *Id.*, ¶90. The court acknowledged the State did not deliberately seek to delay the trial, defense counsel did not object to the State's requests for continuances, and Ramirez was "somewhat delayed" in asserting his right to a speedy trial. *Id.*, ¶89. On the other hand, the court claimed that 46 months was "the longest total delay in any published constitutional speedy trial case in Wisconsin," more than 31 months of the total delay was attributable to the State, and the State failed to explain sizable portions of the delay attributed to it. *Id.*, ¶88. Additionally, the court noted that Ramirez asserted his speedy trial right twice, did not deliberately

seek delay, and it took the State 14 months after Ramirez's initial assertion to finally bring him to trial. *Id.*

¶28   The court of appeals reversed the judgment of conviction and remanded for the circuit court to dismiss the complaint. *Id*., ¶90. The State sought this court's review on the sole issue of whether Ramirez's right to a speedy trial was violated. We conclude it was not and reverse the court of appeals.

## II. STANDARD OF REVIEW

¶29   Whether Ramirez's constitutional right to a speedy trial was violated is a question of law we review de novo. *State v. Leighton*, 2000 WI App 156, ¶5, 237 Wis. 2d 709, 616 N.W.2d 126 (citing *State v. Ziegenhagen*, 73 Wis. 2d 656, 664, 254 N.W.2d 656 (1976)). We uphold the circuit court's factual and credibility findings unless they are clearly erroneous. *See Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615; *State v. Byrge*, 2000 WI 101, ¶¶44–46, 237 Wis. 2d 197, 614 N.W.2d 477.

## III. DISCUSSION

¶30   The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.[3] The United States Supreme Court has pronounced a four-factor balancing test to determine whether a speedy trial right has been violated. *Barker*, 407 U.S. at 530. Those factors include (1) the overall length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. *Id.* Like any balancing test, it requires the court to consider the totality of circumstances particular to the case. *Id*.

### A. LENGTH OF THE DELAY

¶31   The first factor—the overall length of the delay—serves two purposes. *State v. Urdahl*, 2005 WI App 191, ¶12, 286 Wis. 2d 476, 704 N.W.2d 324 (citing *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). At the outset, it functions as a trigger: Before a court conducts a speedy trial

---

[3] Because neither party develops an argument under the speedy trial clause of the Wisconsin Constitution, we do not consider it further.

analysis, the defendant "must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651–52. Delays considered presumptively prejudicial and meriting further inquiry are generally those longer than one year. *Urdahl*, 286 Wis. 2d 476, ¶12; *see* BRIAN R. MEANS, POSTCONVICTION REMEDIES § 38:5 (Aug. 2024 ed.).

¶32     At this point in the analysis, the length of the delay carries little significance beyond serving as an initial threshold triggering the speedy trial analysis. After the defendant establishes a delay "beyond the bare minimum needed to trigger judicial examination," the length of the delay should then be considered in conjunction with the other factors and especially informs the prejudice inquiry. *Doggett*, 505 U.S. at 652 ("This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.").

¶33     In its analysis of the first *Barker* factor, the court of appeals emphasized the delay in this case was "the longest total delay reflected in any published constitutional speedy trial case from Wisconsin," proceeded to characterize the total length of the delay as "extreme," and weighed it "heavily against the State." *Ramirez*, 412 Wis. 2d 55, ¶23. While the overall delay in this case was lengthy, the court overemphasized its significance. For starters, 46 months is generally not long enough to declare a defendant prejudiced as a matter of law. *Compare Barker*, 407 U.S. at 534 (finding "prejudice was minimal" with a delay exceeding five years), *with Doggett*, 505 U.S. at 657–58 (presuming the accused, who was unable to make a particularized showing of prejudice, experienced prejudice as a matter of law, with six of the eight and one-half year delay attributable to the government); *see also* MEANS, *supra*, at § 38.9 ("Lower courts have generally required a delay of six years or more before finding that the delay gives rise to a presumption of prejudice with respect to the fourth *Barker* factor . . . ."); 5 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 18.2(e) (4th ed. 2024) ("[C]ourts 'generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years,' except where the government was responsible for the delay by virtue of something beyond simple negligence." (citations omitted)).

¶34     Even if the delay was prejudicial as a matter of law, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett*, 505 U.S. at 655–56. For example, the State could rebut the total length of the delay under the second

*Barker* factor's analysis by arguing the defendant caused the delays. Alternatively, under the third *Barker* factor, the State could mitigate a long delay by showing the defendant had no interest in pursuing a speedy trial. The total length of the delay in and of itself weighs against the State only insofar as we presume that prejudice caused by pretrial delay "intensifies over time." *Id.* at 652. Once it has served its gatekeeping function, the overall length of the delay re-enters the analysis "as one factor among several," with particular significance to the court's consideration of prejudice to the defendant. *See id.* at 652, 655. By weighing the overall length of the delay "heavily" against the State before considering the other factors, the court of appeals put the cart before the horse.

¶35 In this case, 46 months elapsed after the State charged Ramirez until a jury convicted him. The length of this delay was presumptively prejudicial, meriting a full analysis of the other *Barker* factors.

¶36 The concurrence suggests our analysis of the first *Barker* factor creates a "bright-line rule" that any delay "under five to six years is not prejudicial." Chief Justice Ann Walsh Bradley's concurrence, ¶74. The suggestion is a distortion. We simply reiterate the United States Supreme Court's guidance in *Doggett* that after the first factor's gate-keeping function has been served, we then consider, "*as one factor among several*, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." 505 U.S. at 651–52 (emphasis added).

¶37 The concurrence dodges *Doggett* altogether, instead resorting to an emotional appeal: "A lot can happen in five to six years," the concurrence observes, noting it's longer than a "full presidential term" and the "maximum sentence for a low-level felony." Chief Justice Ann Walsh Bradley's concurrence, ¶73. The concurrence states the obvious, but fails to follow the legal standard articulated in *Doggett* under which prejudice may be presumed as a matter of law. In *Doggett*, the Court's analysis of presumed prejudice that "intensifies over time," *Doggett*, 505 U.S. at 652, hinged on whether the delay impaired the defendant's ability to mount a defense at trial:

> [I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of *exculpatory evidence* and *testimony* "can rarely be shown." And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more

severely. Thus, we generally have to recognize that excessive delay presumptively compromises the *reliability of a trial* in ways that neither party can prove or, for that matter, identify.

*Id.* at 655 (emphasis added) (internal citations omitted); *see also id.* at 660 (Thomas, J., dissenting) ("The Court today proclaims that" "prejudice to [Doggett's] *ability to defend himself* caused by the passage of time" "is indeed an independent concern of the Clause, and on that basis compels reversal of Doggett's conviction . . . ." (emphasis added)). Considering the defendant, Doggett, experienced no pretrial confinement whatsoever and made no particularized showing of prejudice, *id.* at 654, the Court could only presume the length of the delay was so prejudicial to his trial defense that, in light of the other *Barker* factors, dismissal of the charges was warranted. *Id.* at 658 ("When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." (footnotes omitted) (citations omitted)).

¶38 Based on the overwhelming weight of both binding and persuasive authority, the delay in this case—46 months—was considerably less than what courts generally require before finding prejudice as a matter of law. Even if the length of Ramirez's delay was, as the court of appeals put it, "extreme", it should not have been weighed "heavily" against the State until the other *Barker* factors—the reasons for the delay, whether the defendant asserted his speedy trial right, and whether the defendant experienced any prejudice from the delay—were considered.

## B. REASONS FOR THE DELAY

¶39 The second *Barker* factor—reasons for the delay—examines whether the State or the defendant is more to blame for the time that passed from accusation to conviction. *Doggett*, 505 U.S. at 651. A delay caused by the defendant is not attributed to the State. *Norwood v. State*, 74 Wis. 2d 343, 354, 246 N.W.2d 801 (1976). Likewise, "time required for the orderly administration of criminal justice" is not to be considered a "delay" at all. *Scarbrough*, 76 Wis. 2d at 100–01. This includes the time that elapses due to pretrial requirements, such as filing the complaint; conducting the initial appearance, preliminary hearing, and arraignment; setting the trial date; and hearing pretrial motions, so long as they occur "expeditiously without delay." *Id.* at 100.

¶40    Delays attributable to the State are not limited to delays caused by the prosecution, and can include delays attributable to the court system itself. *Ziegenhagen*, 73 Wis. at 666–67. Delays attributable to the State are categorized as valid, neutral, or deliberate. *Barker*, 407 U.S. at 531. A delay caused by the State for a "valid" reason is not weighed against it. *Id.* Valid reasons for delay are those considered "intrinsic to the case itself," such as adjournments required for competency evaluations or the absence of an essential witness. *Norwood*, 74 Wis. 2d at 354; *Ziegenhagen*, 73 Wis. 2d at 668.

¶41    Periods of delay explained by neutral reasons are weighed against the State, but not heavily. *Scarbrough*, 76 Wis. 2d at 96 (citing *Barker*, 407 U.S. at 531). Neutral reasons include the State's negligence, overcrowded courts, inadequate judicial resources, and mounting caseloads. *See Barker*, 407 U.S. at 531; *Scarbrough*, 76 Wis. 2d at 103. Periods of delay caused by deliberate or bad-faith conduct are weighed heavily against the State. *Ziegenhagen*, 73 Wis. 2d at 667 (citing *Barker* 407 U.S. at 531).

¶42    In this case, the State argues valid and neutral reasons explain the delays, such that no period of delay should weigh heavily against it under the second *Barker* factor. Ramirez, on the other hand, argues the State failed to explain many of the delays, particularly "why new trial dates were not scheduled more promptly." Ramirez contends the court of appeals correctly determined that under *Borhegyi*, the State's inability to explain why trial dates were not scheduled more promptly showed a "cavalier disregard" for his speedy trial right, warranting weighing those periods heavily against the State.

¶43    We agree with the State and hold that no period should weigh heavily against it under the second *Barker* factor. Until the court of appeals' decision in this case, no published decision in Wisconsin determined the State showed a "cavalier disregard" under *Borhegyi* in a constitutional speedy trial case, and for good reason: It is analytically unsound. We therefore overrule *Borhegyi* to the extent it introduces a cavalier disregard standard into the constitutional speedy trial analysis.[4]

_____

[4] This court is not required to provide "special justification" for overruling a court of appeals decision. *Evers v. Marklein*, 2024 WI 31, ¶25, 412 Wis. 2d 525, 8 N.W.3d 395 (citations omitted).

¶44    Consider the periods of delay the court of appeals weighed heavily against the State. For period three, the court weighed the 169 days between the arraignment and the first scheduled trial date heavily against the State because the State offered "no explanation" for the delay. For period four, the court concluded "at least some portion" of the period weighed heavily against the State because it failed to "create a record of the specific causes of any delays in scheduling." For period five, the court again concluded "at least some portion" of the period weighed heavily against the State because it "failed to explain why the trial could not be scheduled more promptly." For period seven, the court determined the State did "not offer any explanation" for the delay and weighed the entire period against it. Finally, for period eight, the court held "the latter portion" of the period weighed heavily against the State because the State "fail[ed] to explain why the trial could not be rescheduled more promptly." In essence, the court of appeals considered the State's inability to explain why the circuit court did not schedule the trial sooner as non-explanations and, relying on *Borhegyi*, weighed those periods heavily against the State.

¶45    In response, the State contends those periods of delay are not unexplained. The State argues, for example, that the entire 169 days the court of appeals weighed heavily against it in period three are attributable to the "ordinary demands of the judicial system." Beginning with the 56 days between the arraignment and the December 21, 2016, scheduling order, the State contends a two-month gap early in pretrial proceedings while both parties are still preparing for trial is not abnormal. Next, the State argues the 58 days from the scheduling order to the State's February 17, 2017, motion for a continuance due to witness unavailability was due to the ordinary demands of the judicial system, noting Ramirez did not object and both parties were preparing for trial during that time. The State also argues the 17 days between the State's motion for a continuance and the circuit court's scheduling order on March 6 was required for the "hearing and disposition of pretrial motions." The remaining 38 days do not count in the analysis, the State argues, because the passage of time "during a period in which the parties expected time to pass leading up to trial cannot constitute negligence or deliberate delay by the State."

¶46    The State's arguments highlight *Borhegyi*'s flawed analysis. While reasonable minds could differ over categorizing the 169-day period as valid or neutral, no one could reasonably deem the State's actions or inaction during that time period as a bad-faith attempt to deliberately delay Ramirez's trial with a cavalier disregard for Ramirez's speedy trial right. *Borhegyi*'s "cavalier disregard" standard, embraced by the court of appeals

in this case, lacks a reasoned foundation in binding or persuasive precedent. *See* LAFAVE, *supra*, at § 18.2(c) ("[W]hen the government simply offers no explanation at all, it has been held that the court 'can presume neither a deliberate attempt to hamper the defense nor a valid reason for the delay.'" (citing numerous federal cases)). It appears to have originated as a judicially created standard (without citation) in *Green v. State*:

> The elements of delay that are to be weighed most heavily against the state are (1) intentional delay designed to disadvantage the defendant's defense, (2) a cavalier disregard of the defendant's right, (3) missing or forgetful witness, and (4) prolonged pretrial incarceration. None of these elements appear in this case.

75 Wis. 2d 631, 638, 250 N.W.2d 305 (1977) (footnote omitted). The *Green* court did not elaborate on what it means to act with "cavalier disregard" of a defendant's right nor was it a factor in the case.

¶47 *Borhegyi*'s cavalier disregard standard also poses a practical problem with establishing why the circuit court did not schedule hearings sooner.[5] In order for the State to create a record sufficient to eliminate the risk of being viewed as cavalierly disregarding a defendant's speedy trial right, *Borhegyi* seemingly requires the State to request the trial court enter its calendar into the record at every scheduling conference. Each hearing would require an on-the-record discussion as to why a matter was scheduled on a particular date and not sooner. An already strained judicial system would be burdened with documenting the reasons for every interval of time between circuit court hearings, lest a reviewing court weigh the delay heavily against the State.

¶48 Delays attributed to the State are either valid, neutral, or deliberate, and then weighed accordingly. The cavalier disregard standard articulated in *Borhegyi* is not part of the analysis. With this proper framework in mind, we need not scrutinize every period of delay attributed to the State by the court of appeals. It is clear from the facts that, at worst,

---

[5] *See State v. Borhegyi*, 222 Wis. 2d 506, 513–14 (Ct. App. 1998) ("[The State] does not explain why the matter was not promptly rescheduled, why the October date was ultimately adjourned, or why no date during the ensuing six months could be provided for Borhegyi's two-day trial.").

the periods of delay caused by the State were for neutral reasons. Consequently, we weigh the second *Barker* factor against the State, but not heavily.[6]

## C. ASSERTION OF THE SPEEDY TRIAL RIGHT

¶49     A defendant's assertion of the speedy trial right is "entitled to strong evidentiary weight," *Barker*, 407 U.S. at 531, because it "is in itself probative of prejudice." *Hadley*, 66 Wis. 2d at 364. Although a defendant cannot waive his right to a speedy trial by failing to assert it, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 528, 532. A defendant's "delay in demanding a speedy trial will be weighed against him." *Hatcher v. State*, 83 Wis. 2d 559, 568, 266 N.W.2d 320 (1978) (citations omitted).

¶50     In this case, Ramirez's delay in requesting a speedy trial was significant. Ramirez made his first pro se speedy trial request on September 26, 2018, nearly 32 months after charges were filed against him.[7] On April 15, 2019, Ramirez filed a pro se motion to dismiss, in which he again asserted his right to a speedy trial. Ultimately, it took the State just over 14 months to bring Ramirez to trial after his first speedy trial request. Ramirez requested a speedy trial, which should weigh against the State. Because of the significant delay in asserting his speedy trial right, however, we weigh

---

[6] The concurrence accuses us of engaging in a "one-size-fits-all" "analytical shortcut" but nevertheless agrees the second *Barker* factor cannot overcome Ramirez's 32-month delay in asserting his speedy trial right and "his failure to persuade that the 14-month duration from his assertion of the right to his trial violates the [C]onstitution." Chief Justice Ann Walsh Bradley's concurrence, ¶¶76, 80. Dissecting each period of delay and speculating about the circuit court's rationale for selecting particular hearing dates would add nothing to the analysis nor would it contribute to the jurisprudence addressing this issue. The concurrence implores the court to undertake a useless exercise it doesn't bother to perform, while acknowledging that doing so would have no effect on the outcome of this case.

[7] The parties disagree as to whether Ramirez abandoned his initial speedy trial request. Because the record is unclear, and the State bears the burden of providing an acceptable rationale for delay, *Norwood v. State*, 74 Wis. 2d 343, 354, 246 N.W.2d 801 (1976), we accept Ramirez's assertion of his first speedy trial demand on September 26, 2018.

Ramirez's assertion of the right only slightly in his favor. *See State v. Provost*, 2020 WI App 21, ¶45, 392 Wis. 2d 262, 944 N.W.2d 23 (refusing to weigh the third *Barker* factor in favor of the defendant when the speedy trial right was asserted over two years after the case was originally filed and a trial occurred less than eight months after a speedy trial was requested).

## D. PREJUDICE

¶51    We consider three interests in assessing whether a defendant suffered prejudice due to a prolonged delay before trial: oppressive pretrial incarceration; anxiety and concern; and the possibility the defense will be impaired. *Hatcher*, 83 Wis. 2d at 569 (citing *Barker*, 407 U.S. at 532). In *Barker*, the third interest was described as "the most serious." 407 U.S. at 532. However, the Court has also described the impairment of liberty as a "core concern" of the Sixth Amendment's speedy trial protections. *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *see also Doggett*, 505 U.S. at 659 (Thomas, J., dissenting) ("We have long identified the 'major evils' against which the Speedy Trial Clause is directed as 'undue and oppressive incarceration' and the 'anxiety and concern accompanying public accusation.'" (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971))).

¶52    Ramirez was unable to establish any one of those three interests. While a defendant already incarcerated for a separate crime may be able to show he suffered prejudice in fact from a prolonged delay, *see Hadley*, 66 Wis. 2d at 364–65, Ramirez does not even argue this point on appeal, and the trial court rejected Ramirez's generalized claims of anxiety and stress.

¶53    Ramirez mainly contends he suffered prejudice as a matter of law simply from the length of the delay itself. While "the presumption that pretrial delay has prejudiced the accused intensifies over time," *Doggett*, 505 U.S. at 652, even the most generous reading of the facts favoring Ramirez—958 days of neutral reasons for delay—alone does not warrant dismissal.[8] We conclude the prejudice factor does not weigh in Ramirez's favor.

---

[8] As we already explained, courts generally do not hold a defendant has been prejudiced as a matter of law until the delay reaches five to six years. In this case, the total delay was three years and ten months, and the State was responsible for, at most, 958 days (approximately two years and seven months) of delay.

E. BALANCING THE FACTORS

¶54    On balance, we conclude Ramirez's speedy trial right was not infringed. At most, we could assign the State responsibility for 958 days of delay, caused by neutral reasons weighed against the State, but not heavily. Ramirez waited 32 months before filing a pro se speedy trial demand and waited nearly another seven months before filing his second pro se speedy trial demand. His trial occurred 14 months after he filed his first demand. Ramirez failed to make any particularized showings of prejudice and relies exclusively on the total length of the delay attributable to the State to show prejudice as a matter of law. Given the significant time it took Ramirez to assert his right and the absence of prejudice as a matter of fact, we are not convinced that even 958 days of neutral delays warrant dismissal.

¶55    The only remedy available when a defendant's constitutional speedy trial right has been infringed is dismissal. *Barker*, 407 U.S. at 522. We must be especially careful when applying this "unsatisfactorily severe remedy" because its "overzealous application . . . would infringe 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Id*. at 522 n.16 (quoting another source). Under the circumstances of this case—involving (at worst) only neutral reasons for delays, and a defendant who waited 32 months to assert his speedy trial right and who failed to make any particularized showing of prejudice—we cannot conclude that Ramirez was denied his constitutional right to a speedy trial.

IV. CONCLUSION

¶56    Because Ramirez's constitutional right to a speedy trial was not violated under the facts and circumstances of this case, we reverse the court of appeals and remand for further proceedings.

*By the Court*.—The decision of the court of appeals is reversed and the cause remanded to the circuit court.

ANN WALSH BRADLEY, C.J., with whom JANET C. PROTASIEWICZ, J., joins, concurring.

¶57     The right to a speedy trial is etched in our collective legal history, dating back to the Magna Carta.  *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).  It is "as fundamental as any of the rights secured by the Sixth Amendment." *Id*.

¶58     This right is particularly important in the current moment. The justice system in our state faces a significant and unprecedented lack of access to legal resources.   Access to justice is hindered as legal representation becomes harder to find across a broad swath of Wisconsin. As we experience a "breakdown in our system of appointing attorneys for indigent defendants" marked by public defender shortages and "delays in finding counsel for indigent defendants, especially [in] more rural parts of the state[,]" defendants wait.[1]  *State v. Lee*, 2022 WI 32, ¶15, 401 Wis. 2d 593, 973 N.W.2d 764 (Dallet, J., dissenting).

¶59     Thankfully, Luis Ramirez's case was not plagued by the delays in appointment of counsel that continually gum up the workings of our justice system.  But the delay in his case from charging to trial was still an astounding 46 months.

¶60     Although we must view the fact-specific allegations of this case with an eye to the micro level, we also cannot lose sight of the macro consequences of our decision.  The rule of law this court establishes in this case will arguably apply to all speedy trial claims, even those attributed to systemic delays in finding lawyers to represent indigent defendants.

¶61     In view of the specific facts of this case, I agree with the majority that Ramirez's speedy trial claim is ultimately unsuccessful due to his 32-month delay in asserting his speedy trial right and his failure to persuade that the remaining 14-month delay on its own constitutes a

---

[1] Although this problem is particularly acute in Wisconsin, we are not alone among states.  *See* Emily Rose, Note, *Speedy Trial as a Viable Challenge to Chronic Underfunding in Indigent-Defense Systems*, 113 MICH. L. REV. 279, 288–89 (2014); Hannah Haksgaard, *Rural Practice as Public Interest Work*, 71 ME. L. REV. 209, 213–15 (2019); *see generally* Lisa R. Pruitt et al., *Legal Deserts:  A Multi-State Perspective on Rural Access to Justice*, 13 HARV. L. & POL'Y REV. 15 (2018).

constitutional violation. *See* majority op., ¶54. However, I write separately because the majority creates a precedent that is too exacting on defendants seeking to demonstrate a speedy trial violation. Indeed, under the majority opinion's analytical shortcut, it is difficult to imagine any determination of a speedy trial violation absent a delay of over six years or intentional dilatory tactics by the State. Especially in the current moment and considering the systemic challenges we face, such a result is untenable.

¶62 Accordingly, I respectfully concur.

I

¶63 Ramirez was charged with battery by a prisoner and disorderly conduct on February 1, 2016. *Id.*, ¶4. He experienced a lengthy series of delays from a variety of sources before finally proceeding to trial 46 months later.

¶64 It took time for Ramirez to be appointed counsel. *Id.*, ¶¶5–6. It took time for his appointed counsel to receive and review discovery[2] and then to pursue pretrial motions. *Id.*, ¶8. A witness was unavailable. *Id.*, ¶9. The State realized the trial would take longer than it initially thought. *Id.* There was construction on the courthouse. *See id.*, ¶10. There was a retirement in the district attorney's office. *Id.*, ¶13. Months passed between hearings.

¶65 Ultimately, this perfect storm of events resulted in a 46-month wait before Ramirez actually went to trial. Ramirez made a pro se speedy trial demand at the 32-month mark, and 14 months later he was in front of the jury. *Id.*, ¶¶12, 14. After Ramirez was convicted, he filed a postconviction motion, which the circuit court denied after an evidentiary

---

[2] The majority opinion does not mention the saga of certain video evidence Ramirez requested from the State that may have contributed to the delay. In denying that there was a violation here, the circuit court held it against Ramirez that he persistently asked for a "mythical" video of the incident that resulted in charges. Ramirez was repeatedly told that the video did not exist, but it turns out the video *did* exist. Faulting Ramirez for his persistence in seeking evidence puts him between a rock and a hard place. Ultimately, this fact does not swing the balancing test the other way, but I observe that Ramirez's perseverance in seeking this evidence should not be held against him in any way.

hearing. *Id.,* ¶15. Subsequently, Ramirez appealed and the court of appeals reversed. *State v. Ramirez,* 2024 WI App 28, 412 Wis. 2d 55, 8 N.W.3d 74.

¶66    The court of appeals issued a thorough opinion, scrutinizing each period of delay and assigning fault and the weight to be given to each period. Noting that "46 months is the longest total delay in any published constitutional speedy trial case in Wisconsin[,]" the court leaned heavily on the length and reasons for the delay in its analysis. *Id.,* ¶88.

¶67    The thorough nature of the court of appeals's approach is exemplified by its summary and weighing of the reasons for the delay. *See id.,* ¶¶70–74. After carefully breaking down the 1,401 days of delay into eight discrete periods, the court of appeals determined:

> 958 days, which is more than 31 and one-half months, and more than two-thirds of the total time it took to bring Ramirez to trial . . . are all attributable to and weigh against the State— either because the delay was caused directly by the State for a reason that is not valid, or because the State fails to offer any reason for the delay.

*Id.,* ¶71.

¶68    Now, the majority opinion reverses the court of appeals. The majority correctly frames its analysis around the *Barker* factors. "In order to determine whether an accused's right to a speedy trial has been violated under the Federal Constitution, we use the four-part balancing test established in *Barker* [*v. Wingo,* 407 U.S. 514, 530 (1972)], and we use the same test under the Wisconsin Constitution."[3] *State v. Urdahl,* 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324. "We consider (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Id.*

¶69    Any analysis of a speedy-trial claim is necessarily fact dependent. "The right to a speedy trial is not subject to bright-line determinations and must be considered based on the totality of

---

[3] As the majority opinion observes, Ramirez does not make any specific argument under the Wisconsin Constitution, so the analysis here is addressed solely under the United States Constitution. Majority op., ¶30 n.3.

circumstances that exist in the specific case." *Id.* Essentially, the test weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily." *Id.*

¶70 Pursuant to this analysis, the majority opinion balances these factors and determines that "Ramirez's speedy trial right was not infringed." Majority op., ¶54. In arriving at this conclusion, the majority opinion states that it "need not scrutinize every period of delay attributed to the State by the court of appeals[,]" concluding that "at worst, the periods of delay caused by the State were for neutral reasons." *Id.*, ¶48. Ultimately, Ramirez's assertion of a speedy trial violation was sunk by his delay in asserting the speedy trial right and his lack of a particularized showing of prejudice. *Id.*, ¶54. "Given the significant time it took Ramirez to assert his right and the absence of prejudice as a matter of fact, we are not convinced that even 958 days of neutral delays warrant dismissal." *Id.*

II

¶71 The majority's analytical shortcut begins when it gives short shrift to the first *Barker* factor. It correctly acknowledges the dual purpose of the first *Barker* factor, i.e., the length of the delay. *See id.*, ¶31. Case law is clear that the first factor "has two roles." *Urdahl*, 286 Wis. 2d 476, ¶12. As the State contends, "it is a triggering mechanism used to determine whether the delay is presumptively prejudicial." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). But then also, if "the delay is presumptively prejudicial, the length of delay is one factor in the four-part balancing test." *Id.*

¶72 Even though the majority correctly states the dual role of the first factor, this appears to be mere lip service. As the court of appeals observed, this case represents "the longest total delay reflected in any published constitutional speedy trial case from Wisconsin" in the last 50 years. *Ramirez*, 412 Wis. 2d 55, ¶23. Nevertheless, the majority casts aside the 46-month delay as "generally not long enough to declare a defendant prejudiced as a matter of law." Majority op., ¶33.

¶73 The majority later doubles down, stating that "courts generally do not hold a defendant has been prejudiced as a matter of law until the delay reaches five to six years." *Id.*, ¶53 n.8. Five to six years? A lot can happen in five to six years. That is longer than a full presidential term. It is longer than the maximum sentence for a low-level felony. *See*

WIS. STAT. § 939.50(3). Such a lengthy delay before a defendant is offered any protection renders the constitution's speedy trial guarantee nearly meaningless.

¶74 Is the majority creating a bright-line rule that anything under five to six years is not prejudicial? If so, that would appear to run counter to the United States Supreme Court's instruction that speedy trial analyses must be conducted on a case-by-case basis. Indeed, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522. And if so, why draw the line there? In addition to being excessively long, a period of five to six years is wholly arbitrary. Why not four years? Why not three? This makes a mockery of the word "speedy."

¶75 Despite the significant length of the delay, the majority still says, "no matter," because the reasons for the delays were "neutral." *See* majority op., ¶48. It says that delays fall into one of three categories, "valid, neutral, or deliberate," and then are "weighed accordingly." *Id.* Consequently, in contrast to the court of appeals's thorough approach, which splits up and examines each time period of delay to determine the cause and attribution,[4] the majority opinion states in a conclusory manner that "we need not scrutinize every period of delay attributed to the State by the court of appeals." *Id.*

¶76 This is an analytical shortcut. The majority's approach is one-size-fits-all when the reality is more nuanced. There were many reasons for the delays in this case. The courthouse was under construction, retirements in the district attorney's office occurred, and there were large gaps between scheduled hearings. Yet the majority lumps all of these reasons together, terming them all "neutral": "At most, we could assign the State

---

[4] Several other states also appear to require the exacting scrutiny that the court of appeals did here. *See State v. Ariegwe*, 167 P.3d 815, 848 (Mont. 2007) (providing that in a speedy trial analysis the court "first identifies each period of delay in bringing the accused to trial" and then "attributes each period of delay to the appropriate party"); *Jones v. State*, 367 A.2d 1, 4 (Md. 1976) (setting forth that "[i]n the resolution of the speedy trial issue in this case we, of course, must carefully scrutinize all occurrences between Jones' arrest and trial"); *State v. Valencia*, 224 P.3d 659, 665–66 (N.M. Ct. App. 2009) (examining and "[p]arsing the [p]eriods of [d]elay").

responsibility for 958 days of delay, caused by neutral reasons weighed against the State, but not heavily." Majority op., ¶54.

¶77 I fear that the rule arising from the majority's analysis appears to be that as long as the delays are at least for "neutral" reasons, then there cannot be a speedy trial violation. Yet, delays caused by "neutral" reasons can drag on and on and on and on and on.

¶78 So what is a "neutral" reason? The majority states that "[n]eutral reasons include the State's negligence, overcrowded courts, inadequate judicial resources, and mounting caseloads." *Id.*, ¶41 (citing *Barker*, 407 U.S. at 531; *Scarbrough v. State*, 76 Wis. 2d 87, 103, 250 N.W.2d 354 (1977)). Such reasons are "weighed against the State, but not heavily." *Id.* (citing *Scarbrough*, 76 Wis. 2d at 96).

¶79 True, but at some point don't reasons that are not "weighed heavily" add up? Many light weights added up equals a heavy weight. Doesn't there have to be a point at which the proverbial straw breaks the camel's back? Under the majority opinion, it seems the answer is no.

¶80 In this case Ramirez's claim was doomed by his 32-month delay in asserting his speedy trial right and his failure to persuade that the 14-month duration from his assertion of the right to his trial violates the constitution. However, I cannot join the majority's approach because it could give the State a pass in cases involving delays even longer than the 46 months at issue here.

¶81 At a time where defendants are experiencing significant delays in appointment of counsel, this concern is especially acute.[5] Delays due to the lack of available attorneys can stretch into the triple digits. *See Lee*, 401 Wis. 2d 593, ¶6 (Dallet, J., dissenting) (setting forth that the defendant was held in custody "for 113 days before a preliminary

---

[5] Delays attributable to lawyer shortages are not the only worry. Efficient disposition of cases can also be affected by a lack of resources in other areas, such as court interpreters. *See* Sarah Lehr, *Interpreters Wanted: Wisconsin Courts Struggle To Meet Language Needs*, WIS. PUB. RADIO (Apr. 24, 2025, 9:03 AM), https://www.wpr.org/news/interpreters-wanted-wisconsin-courts-struggle-meet-language-needs.

examination, 101 of which were prior to the appointment of counsel").[6]  In 2022, the state public defender opined that it would "take several years to clear a backlog of roughly 35,000 cases because of a shortage of public defenders."[7]

¶82    In Wisconsin's vast rural areas, especially in the northern part of the state, the problem has reached crisis levels.  Although the data is admittedly at least seven years old, an article published in 2018 describes how "[o]ver 60% of the state's attorneys practice law in major urban areas, leaving some counties in rural Wisconsin with attorney-to-resident ratios as high as 1:4,452."  Lisa R. Pruitt et al., *Legal Deserts:  A Multi-State Perspective on Rural Access to Justice*, 13 HARV. L. & POL'Y REV. 15, 81 (2018) (footnotes omitted).  In comparison, the statewide ratio is about 1:389.[8]

¶83    Additionally, the population that is practicing law in the rural north is rapidly aging.  As of 2018, "[a]cross the northern half of the state, only six of the forty attorneys in Vilas County are under the age of fifty, and Florence and Pepin counties have no lawyers under fifty.  Oconto County has two, and no new attorneys have moved into the county in the last decade."  *Id.* at 81–82 (footnotes omitted).  In total, as of that time, "[n]ine counties in northern Wisconsin ha[d] ten or fewer active attorneys."  *Id.* at

---

[6] *See also* Pruitt et al., *supra* note 1, at 82 (lamenting that it "can take up to eight weeks to assign a public defender after being arrested").

[7] *'UpFront':  State Public Defender Says It Will Take Years To Clear 35,000-Case Backlog*, WISPOLITICS (Apr. 18, 2022)**,** https://www.wispolitics.com/2022/upfront-state-public-defender-says-it-will-take-years-to-clear-35000-case-backlog/.

[8] Demographics,                AM.                BAR                ASS'N, https://www.americanbar.org/news/profile-legal-profession/demographics/  (last visited June 17, 2025).

82 (footnote omitted). Although this data is now seven years old,[9] the problem has certainly not abated. In fact, it has only worsened.[10]

¶84 As of 2024, the number of active attorneys in Wisconsin had dropped four percent over the last four years, while the number of attorneys in rural Wisconsin had plummeted by seven percent.[11] Eight counties have no certified private bar attorneys to take cases when the state public defender cannot represent a defendant.[12] Such a shortage "not only impacts the constitutional rights of defendants—it also affects victims and our communities."[13] Despite intervening attempts to address the root causes of the shortage, the problem persists.[14]

¶85 The shortage of lawyers in rural areas is a systemic problem, not an intentional one, putting it at risk of being termed "neutral" in the parlance of the majority's speedy trial analysis.[15] It is possible that a

---

[9] The lack of readily available updated data is part of the problem. In 2024, then–Chief Justice Annette Ziegler created the attorney retention and recruitment committee "to study the attorney shortage issue and make recommendations on how Wisconsin can address the problem." Press Release, Wisconsin Ct. Sys., Chief Justice Establishes Committee To Address Attorney Shortage (June 6, 2024), https://www.wicourts.gov/news/view.jsp?id=1649. The committee's discussions and deliberations are still underway.

[10] *See* Jeff M. Brown, *Despite Pay Raise, Attorney Shortage Still a Problem in Rural Counties*, WIS. LAW., Dec. 2023, at 37; *see also* Dean R. Dietrich, *Guest Editorial: Justice for All-Tackling the Lawyer Shortage in Rural Wisconsin*, WNA (Oct. 31, 2023), https://wnanews.com/2023/10/31/guest-editorial-justice-for-all-tackling-the-lawyer-shortage-in-rural-wisconsin/.

[11] Steven Walters, *Attorney Shortage Worst in Wisconsin's Northern Counties*, ISTHMUS (June 24, 2024, 12:00 PM), https://isthmus.com/news/news/attorney-shortage-worst-in-wisconsins-northern-counties/.

[12] *Id.*

[13] Press Release, Wisconsin Ct. Sys., *supra* note 9.

[14] *See* Brown, *supra* note 10, at 37.

[15] Delays resulting from a "systemic breakdown in the public defender system" may be charged to the State. *Vermont v. Brillon*, 556 U.S. 81, 94 (2009)

defendant could spend months or even years awaiting the appointment of an attorney, a necessity for any trial, much less a speedy one. And as the majority opinion demonstrates, when a delay is termed neutral, good luck to a defendant in succeeding on a speedy trial claim.

¶86 This court should not give its seal of approval to such an approach. Rather, the court of appeals approached this case the right way by breaking down the periods of delay and determining the reasons behind them and the weight to be given in the *Barker* analysis. The analysis conducted by the court of appeals represents a more nuanced approach that is better suited to the fact-specific nature of a speedy trial determination. *See Urdahl*, 286 Wis. 2d 476, ¶11.

¶87 Because the majority eschews such an analysis in favor of a shortcut, I do not join the majority opinion and respectfully concur.

---

(internal quotation omitted). But this fact alone does not mean that it weighs heavily against the State or ultimately tilts the balance in the *Barker* analysis.

REBECCA FRANK DALLET, J., with whom JILL J. KAROFSKY, J., joins, concurring.

¶88     Although I agree with and join nearly all of the majority/lead opinion, I do not join paragraph 37 and footnote 6. These portions of the opinion, which levy criticism against Chief Justice Ann Walsh Bradley and her concurrence, are unnecessarily dismissive and adversarial in tone, and they detract from what is otherwise a well-written and well-reasoned opinion. In our opinions, as in life, we must strive to disagree without being disagreeable. Because the majority/lead opinion fails to do so, I respectfully concur.

JILL J. KAROFSKY, J., concurring.

¶89     While an inmate at Columbia Correctional Institution, Luis Ramirez attacked a correctional officer, Christopher Smith.[1] Ramirez repeatedly stabbed Smith in the head and neck with a sharpened pencil. Smith received immediate medical attention from onsite nurses to determine the source of a large amount of blood and the number of lacerations. Due to the severity of his wounds, an ambulance transported Smith to the hospital where he continued to receive treatment. After discharge, Smith required at least five follow-up medical visits. The State subsequently charged Ramirez with battery by a prisoner and disorderly conduct, both with repeater and use-of-a-dangerous-weapon enhancers. Smith testified at trial about Ramirez's assault and the injuries he sustained. Just as Ramirez waited for his trial to commence, so did Smith.

¶90     I agree with the majority opinion and join it. I write separately, however, to emphasize that our constitution and statutes require a court to balance the rights of victims alongside those of the State and defendants in speedy trial cases.

¶91     The Sixth Amendment of the United States Constitution, and Article 1, Section 7 of the Wisconsin Constitution guarantee a defendant's right to a speedy trial. In *Barker v. Wingo*, the United States Supreme Court set forth a four-part test to assess whether a defendant's constitutional speedy trial right has been violated. 407 U.S. 514, 530 (1972). Under *Barker*, a court balances (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. *Id.*

> [N]one of the four factors identified above a[re] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and *must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.*

---

[1] I use a pseudonym to protect the privacy and dignity of the victim. *See also* WIS. STAT. § 809.86 (2023–24).

*Id.* at 533 (emphasis added).

¶92    Under *Barker*, dismissal of the charges is the only remedy when there has been an infringement of a defendant's speedy trial right. *Id*. at 522. The *Barker* Court acknowledged the magnitude of that remedy, calling it "unsatisfactorily severe . . . because it means that a defendant who may be guilty of a serious crime will go free." *Id.* at 522. And "overzealous application . . . would infringe 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Id.* at 522 n.16 (internal quotation omitted).

¶93    Concurrent to the rights of a defendant, our constitution and statutes guarantee each victim a range of rights, which are to be protected "by law in a manner no less vigorous than the protections afforded to the accused." WIS. CONST. ART. I, § 9m(2).[2] The importance of protecting a victim's rights is echoed again in WIS. STAT. § 950.01: "[T]he rights extended in this chapter to victims and witnesses of crime are honored and protected by law enforcement agencies, prosecutors and judges in a *manner no less vigorous than the protections afforded criminal defendants*." *Id.* (emphasis added).[3]

¶94    The Wisconsin Constitution provides that a victim is to "be treated with dignity, respect, courtesy, sensitivity, and fairness." WIS.

---

[2] The Supremacy Clause requires any federal law to supersede any conflicting state law. *See* WIS. CONST. ART. 1, § 9m(6) ("This section is not intended and may not be interpreted to supersede a defendant's federal constitutional rights or to afford party status in a proceeding to any victim."). Nonetheless, when a court is conducting the *Barker* test, it is appropriate for the court to also consider a victim's rights under the Wisconsin Constitution.

[3] The protections serve the interest of society at large, as well as victims. The victims' rights statutory sections are intended promote the "civic and moral duty of victims and witnesses of crime to fully and voluntarily cooperate with law enforcement and prosecutorial agencies, and . . . [the] importance of such citizen cooperation to state and local law enforcement efforts and the general effectiveness and well-being of the criminal justice system . . . ." WIS. STAT. § 950.01.

CONST. ART. I, § 9m(2)(a). These rights are consistent with the federal Crime Victims' Rights Act, 18 U.S.C. § 3771, and are mirrored in most states.[4]

¶95    Under the constitution, a victim also has a right to a timely disposition that is protected from "unreasonable delay." WIS. CONST. ART. I, § 9m(2)(c), (d). These rights, echoed in our statutes, protect a victim from the stress of unresolved matters. WIS. STAT. § 950.04(1v)(ar), (k). This makes sense: a "lengthy pretrial delay might force a victim of violent crime to continually relive the trauma of the crime in trial preparation . . . ."[5]

¶96    When a court is deciding whether to grant a motion for a continuance or a motion for a dismissal, it needs to consider the victim. In the context of a motion for continuance, a court should consider that a victim's right to "[f]airness requires, for example, that the victim be given the opportunity to be heard on the matter of a delay requested by the defendant, especially in light of the victim's right to proceedings free from unreasonable delay."[6] A court must also ensure a victim has been consulted and heard prior to granting a motion for dismissal.[7]

¶97    The rights afforded to a victim are not at odds with the *Barker* test. Instead, these rights reflect additional considerations to be weighed by a court, so that a victim's rights are protected alongside the State's and a defendant's rights. A court tasked with analyzing speedy trial cases needs

---

[4] *See generally Ten Common Victims' Rights*, NAT'L CRIME VICTIM L. INST. (2023), https://ncvli.org/wp-content/uploads/2024/02/Common-Victims-Rights_final.pdf.

[5] Craig Peyton Gaumer, *Protecting the Innocent: Victim-Witness Rights in Illinois*, 83 ILL. BAR J. 568, 574 (1995).

[6] Steven Jon Kyl et al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 LEWIS & CLARK L. REV. 581, 613 (2005).

[7] *See, e.g.*, *United States v. Heaton*, 458 F. Supp. 2d 1271, 1273 (D. Utah 2006) (finding that the right to be treated with fairness and dignity requires that "in passing on any government motion under Rule 48(a) [regarding dismissal] in any victim-related case, the court will expect to see the prosecutor recount that the victim has been consulted on the dismissal and what the victim's views were on the matter.").

to balance the constitutional and statutory rights of all involved. As it relates to *Barker*'s "difficult and sensitive balancing process" a court must consider the crime victim. 407 U.S. at 533. The four factors of *Barker* cannot be treated as talismanic; a victim's rights must always be part of any judicial balancing.

I respectfully concur.